UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

        -against-                              **SENTENCING MEMORANDUM**

PIETRO PINTO,                              16-CR-347 (RJD)

        Defendant.
-----------------------------------------------------------X
DEARIE, District Judge

      Pietro Pinto comes before the Court for sentencing after his guilty plea to a single count charging conspiracy to engage in Hobbs Act robbery. The charge relates to the March 2015 robbery of a truck in New Jersey. Mr. Pinto was arrested in May 2016 and immediately admitted his limited involvement in the conspiracy. Given his long-standing polysubstance abuse and without objection from the government, Mr. Pinto was enrolled in the Court's Pretrial Opportunity Program ("POP") on December 22, 2016. He graduated from POP over one year ago and continues to attend monthly meetings.

## BACKGROUND

      Mr. Pinto's precise involvement in the charged conspiracy is surprisingly difficult to discern from the Presentence Report ("PSR") and the parties' submissions. What we do know about the incident may be briefly summarized. On the afternoon of March 26, 2015 in South Plainfield, New Jersey, two armed men emerged from a white van and hijacked a truck at gunpoint. The truck contained a locked safe filled with, according to the government, the cash proceeds of narcotics trafficking. The assailants transferred the safe from the truck to the van, which was then driven to Staten Island. It is undisputed that Mr. Pinto was not one of the armed assailants and was not engaged in narcotics trafficking or money laundering. As reported by the

1

Probation Department, Mr. Pinto "acted solely as a driver [of the van] and he had no other involvement in this Hobbs Act robbery conspiracy." ECF 76-1 at 2.

## DISCUSSION

The parties agree that Mr. Pinto faces an advisory guidelines range of 87 to 108 months. With some hesitation regarding a possible minor role adjustment, the Court adopts the findings of the PSR and the parties' stipulated calculation of the applicable guidelines range. Mr. Pinto seeks a non-custodial sentence, citing his remarkable turnaround as a POP participant and, despite several initial setbacks and relapses in his recovery, that he has remained drug-free since November 2018.

The government does "acknowledge[] the defendant's efforts and commends him for making great strides towards his personal development during his participation in [POP]," and agrees that "the Court should consider the defendant's successful completion of the [POP] program as a mitigating factor under 18 U.S.C. § 3553(a)." ECF 96 at 1. Despite these commendations, however, the government urges the Court to impose a custodial sentence and insists that there must be serious consequences for Mr. Pinto's conduct.

The Court agrees. There must be serious consequences. And there have been. Mr. Pinto is a felon. He has lived with uncertainty about the outcome of this case for over six years. His offense has brought him under the direct and intense scrutiny of Pretrial Services and the judges of the POP program. He has been required to appear before his fellow participants and the POP judges every month to report on his progress or acknowledge his failures. During his earlier years in POP, he was remanded twice for non-compliance and was required to participate in extended residential treatment. Mr. Pinto has satisfied these requirements without a single unexcused absence, and he will continue under Probation's close supervision in the Relapse

Accountability and Prevention ("REAP") program for another year, including monthly POP meetings and random drug testing.

      Sitting with Mr. Pinto month after month, year after year, I heard his reports to his fellow participants and observed their interactions. When things did not go well in the early years, I listened to his sad admissions, reluctant at first, as he shared his initial failures with humility and embarrassment. Since his release from the St. Christopher's Inn residential treatment program in November 2018, he has remained drug free. Not surprisingly, with his drug dependency behind him, so too is his criminal lifestyle. This is no accident. It is instead the product of hard work, earned through the thicket of success, failure, and then success again. He has emerged as a disciple of recovery, responsibility, and redemption. Since achieving sobriety, Mr. Pinto has been an important member of his POP group, a source of encouragement and support for other participants.[1] His encouragement to others has been invaluable, in many ways far more valuable than anything I or my colleagues can offer.

      In my judgment, additional incarceration is unnecessary and ill-advised if legitimate sentencing objectives are to be achieved and maintained in Mr. Pinto's case. POP affords defendants "an opportunity to engage in productive behavior, achieve a drug-free and law-abiding lifestyle, and prove to the court and the community that an otherwise appropriate

---

[1] As one example, in an October 26, 2022 memorandum to the Court, Pretrial Services Officer Shavoy Atkinson advised that when another POP participant recently relapsed, Pretrial recruited Mr. Pinto to assist by encouraging the relapsed participant to consider medically assisted treatment. The memorandum noted that "the other participant ultimately agreed to obtain an assessment for the recommended form of [medically assisted] treatment and advised Pretrial Services that *Mr. Pinto's encouragement and support were instrumental to him*. Pretrial Services, program Judges, and program peers applauded Mr. Pinto for his meaningful encouragement and for 'paying it forward' to help another individual." (emphasis added).

sentence of imprisonment is unnecessary, in whole or in part."[2] Mr. Pinto's success in POP has proven as much to me. The § 3553 factors do not counsel otherwise. Without question, the offense was serious and potentially violent, and Mr. Pinto's history is far from perfect. But the critical goal of just punishment has been met, particularly given Mr. Pinto's relatively minor, non-violent role. Further, in this Court's view, what will deter Mr. Pinto most effectively now is not so much the fear of a jail cell as much as a return to drug dependency and the accompanying risks to the responsible life he now enjoys. And there is true positive value that will be achieved in Mr. Pinto's non-custodial sentence: Today's resolution of the case provides genuine incentive for those facing the specter of conviction and possible incarceration to commit themselves to defeating their own addictions.

## CONCLUSION

For generations, lawmakers and law enforcement have sought ways to address the problem of drug addiction and the ever-present threat of those callously determined to thrive off the misery and suffering of others. It is appropriate to ask where all those well-intentioned efforts have taken us. The battle continues. And the call for "bold new approaches" is repeated time and time again. Law enforcement does the job we ask them to do, and prisons fill up for lengthy periods with nonviolent first offenders and low-level operatives. Scores of families are severely impacted by the absence of loved ones and supporters. As the pendulum swings back and forth over the years, our collective experience gives us good reason to doubt that a punitive, one-dimensional approach will accomplish much of anything in addressing the problem of chronic addiction. Deterrence is at best a doubtful hypothesis. For too many, the ruthless and

---

[2] See Pretrial Opportunity Program Policy, available at: https://www.nyept.uscourts.gov/pretrial-opportunity-program (last accessed December 12, 2022).

uncompromising demands of addiction remain unaddressed as do the sometimes obvious and rarely surprising underlying causes. That sad reality is obvious to the judges who participate in POP and other prison diversion programs. We see and sense the struggles of the participants and appreciate and admire the successes of participants like Mr. Pinto.

For the foregoing reasons, as well as those discussed during Mr. Pinto's December 13, 2022 sentencing hearing, Mr. Pinto is sentenced to two years of probation, one of which he will serve in the REAP program. During probation, he shall be subject to the conditions proposed by the Probation Department to the extent applicable.

SO ORDERED.

Dated: Brooklyn, New York  /s/ Raymond J. Dearie
December 15, 2022  RAYMOND J. DEARIE
United States District Judge